Our third case for this morning is Foxxy Ladyz Adult World v. Village of Dix, Illinois. Mr. Giampietro. Good morning, Your Honors. My name is Wayne Giampietro. I'm the attorney for the plaintiff's appellants in this case, Foxxy Ladyz Adult World and Dirt Cheap Inc. Those two companies operate a business in the village of Dix, Illinois, which is virtually the only business within that small town. They provide adult entertainment, including new dancing, and they do not sell alcohol or any other controlled liquor of any kind. They do, however, allow patrons to bring alcoholic liquor with them. So let me start right away and see if, I'm not sure whether we can narrow this or not, but they're the three ordinances, right, that you're challenging. Correct. Two of which deal with alcohol, and to me, I'm looking at them, I appreciate them in the brief, they look to me to pertain to alcohol throughout the village. The first one, the prohibiting consumption and or possession of open alcohol in public places with the very broad definition of public, and 210-06, prohibiting the possession within businesses operating as a public accommodation. So I understand that the village of Dix, or so the parties have said, is dry, right? Right. So why, what's wrong with these ordinances? Why are they somehow constitutionally suspect? The Illinois Liquor Control Act does not give the village the authority to enact ordinances such as this. So what do you rely on when you say that? I mean, the question is, if the state statute is silent, why does the village need authorization under the statute in a sense, as they say, to preserve the dry status of the village to the fullest extent permitted by law? That's in 0-04. Same thing in 0-06. The statute's not silent, Your Honor. 235 ILCS 5-2-1 says, nothing in the Liquor Control Act shall prevent the possession and transportation of alcoholic liquor by the possessor for the personal use of the possessor, his family, and guests. The statute specifically prevents the village from doing what they're purporting to do. But, I mean, if I were thinking from the village's point of view, I might say that they're just saying, you can't possess it in public places with the definition of public. I don't see any prohibition in either ordinance against transportation of liquor. I guess you have to leave Dix and go down to some other town to buy your liquor, but you can go buy it there, drive home, and move it into your house, right? I mean, this is just either BYO or consumption or possession in a public place. Well, but the statute says individuals have the right to possess and transport alcoholic liquors. Isn't there something that has to be sealed or something if it's in a public, in the open? I'm sorry? Does it have to be sealed or closed, not open in other words? I think what you just read doesn't say that there's a state right to sit down in a public park and drink, you know, a bottle of beer. Well, what I'm saying is— I mean, what you read is about private possession and consumption, and I don't think one has to read the village's ordinances to address that. Well, the state has the authority to take action on this area, and as I read the statute, it has forbidden villages like Dix to do what the state has not done itself, specifically when it says you can't interfere with the ability of people to possess it and transport it. In private places, though. I mean, go back to—maybe I should just listen more carefully. Well, it doesn't say that, Your Honor, and, you know, as I read the statute, it doesn't say it's got to be in your home or anything private. It just says you can't interfere with a person's ability to do that. Well, and as Judge Mannion says, the Board of—this is 04—prohibit the possession of open alcohol in public places, and there's a reference to no person shall possess, blah, blah, blah, except on the original package with the seal unbroken on any public property. That's 04. And, of course, 06 is dealing with open as well. Well, I think you have to read this in context, Your Honor. It certainly, as it's applied to the plaintiffs in this case, in that this ordinance is—or these two ordinances are clearly designed to interfere with the business of this one place, this one entity. You know, you may be right, but this isn't the same as some of the ordinances that have said, you know, adult entertainment places can't serve alcohol. It's not an ordinance like that. The Village of Dix is willing to impose these restrictions on the entire village. But there's only one business. It talks about businesses can't do this, and there is only one business. There's not a motel there? No. I think there's a gas station. Huh? There's maybe a gas station. Well, maybe. Apart from this. You say virtually none. I understand why this one you say is targeted. Nobody will admit ever frequenting these places, but I'm sure drinking is a pretty important part of that. But there must be a street in Dix or a park or something. There are plenty of public places that are not— Post office. Well, certainly there are streets. I mean, obviously, Your Honor. There are places people walk about. Main street, parks, perhaps. You know, there are places that are out in the public. And as I understand this ordinance, it applies to them, too. It doesn't just apply to foxy ladies. But in addition to the general challenge, we have an as-applied challenge as well, that the reason that this was enacted was not for the general public welfare. And even if they had that sort of in the back of their minds, they still are applying it to this business for the purpose of depriving the plaintiffs of their First Amendment rights. And 44 Liquor Mart specifically says you can't just use your authority to control alcohol to interfere with First Amendment rights. So as to the as-applied challenge, you still have to do all of the things that the Supreme Court said in the City of Los Angeles v. Alameda books to show that there is a proper purpose. So not being able to drink is interfering with the First Amendment right to dance nude, right? Oh, absolutely. I mean, at least that's what we allege. And remember, we're only here at the pleading stage. We haven't had an opportunity to introduce evidence. Two or three paragraphs talk about a lot of harassment by the police and some other things. Wasn't there some sort of an immediate cause, a big fight or something that caused the problem that maybe alerted the council? That's not in the record, but I'm only looking at your complaint and saying there must be some reason why they're showing up. First of all, Your Honor, nobody in connection with the plaintiffs have ever been charged with any offense of any kind. As I understand it, there was one disagreement between a couple of the employees of the plaintiffs, and they got into some kind of a little dispute with each other. But there was nothing involving the public. There was nothing of the kind of thing that's typically viewed as an adverse secondary effect. And as I said before, if the village wants to enact these kinds of ordinances, they have to do what the Supreme Court has said. They've got to show that it's, number one, exercising a legitimate public power. It does not completely prohibit adult entertainment. The ordinance is aimed not at suppressing expression but combating legitimate adverse secondary effects. The regulation is narrowly tailored and leaves reasonable alternative avenues of expression. And Ben's bar from this court says the same thing. So let's hear from you about why the village says we aren't completely preventing erotic dancing or adult entertainment or whatever you want to call it because people can put on pasties and a G-string and do everything or 99 percent of what they would do without that. What's your response to that? There's no authority that says they've got the right to do that. All the cases say they've got to prove through legitimate evidence that there is a reason for them to do this. And they don't purport to do that. What they do purport to say, it's a little bit vague. Now I'm looking at the public nudity ordinance. They say their second whereas clause is the Board of Trustees wants to update the old ordinance, which certainly was out of date, use language that's been approved by the courts that's consistent with the Illinois and the United States Constitution. Then they have some generic language about social order, health, welfare, and so on. And they want to continue the prohibition on public nudity. So what they're saying is in this somewhat confusing line of Supreme Court cases, a right to restrict public nudity has been recognized, especially if it only marginally affects the ability to convey expressive conduct. And so the village is saying, well, we have the basic right at least to regulate, and this is only a very marginal impact. Why not? That's a question of fact, Your Honor, that the village bears the burden of showing that, number one, it has a legitimate interest in doing this. Number two, it's doing it in the least restrictive way possible. And that's why you have to have a hearing in all these cases to show what the situation is in this particular village, what the residence of it, and this particular business. And that's been made clear by this court in the Alameda Books case and DVD LLC. So what about Renton? What about Renton, though? Renton against Playtime Theaters seems to say that cities don't have to conduct ñ everyone doesn't have to reinvent the wheel. They don't have to conduct new studies or produce their own evidence. Do you think Alameda Books just overrules that? Yeah, I think it does. In essence, it overrules it. Yes, indeed, Your Honor. It's a later case, and it clearly says you cannot rely on other studies from other dissimilar places. It's one thing if you've got another ordinance in another municipality that's like the one. But here we're talking about a village that's got, I don't know, something less than 1,000 people and alleging itself to the entire state of Indiana. And it's apples and oranges, Judge. It's a curious thing. This town is, what, pretty small. 500 people, it said. Then it's a square. What is it, four square miles or something? Something like that. Why did they locate there? Are they over on the other side of the interstate? They're on the other side of the interstate, Judge. I think, and obviously it's not in the record, but my understanding is they didn't think they were in the village. That's what it looks like. And that was the big mistake. Well, it was a mistake. And so there they are. So they get in the dry area and sit about 100 yards down the road where everybody they want can just stop by, park their car behind the police, and be done with it. The other thing that I'm looking at, and I'm going to ask the other side this, with the dress code, I'll call it that, that applies to everybody, doesn't it? Well, right. And as I say, while it may be permissible to do it in certain areas and in certain places to enact that kind of a dress code, when you have an as-applied challenge as we have here, and the allegations are that there's a direct effect on the business that's constitutionally protected by the First Amendment, you've got to at least have a hearing to flesh this all out and find out, is there really anything that's going on that causes adverse effects by this conduct? Because if there's not, then you can't prohibit this kind of conduct. And obviously nobody forces anybody to go to this business. If people don't like this kind of entertainment, they don't have to go there. Well, I guess what I'm focused on is that if the drinking policy applies to the whole town, does the dress code also apply to the whole town? Well, it purports to. The ordinances purport to do that, sure. Well, what if one of the gals decides to go to the post office and didn't change her clothes? Well, I don't know, because it doesn't really impact the plaintiffs. No, I'm just looking at it from the other side. Right. Well, I suppose if it's really comes down to what's the purpose of the statute. I know that. That's why they're trying to avoid that purpose. Right. And that they're trying to write this statute so that it does not concentrate just on that. And that's why the other side of the coin is that one of the gals, I don't know what they do during the day or what time of day this is, but to go to the post office in her uniform. She might change her shoes, other than that. Or even that opaque stuff or whatever it is. Well, as I say, but that's. I don't say it facetiously. I'm really serious. If that's how it applies, then that is a universal thing, and the same thing applies in the drinking. I think that question is a good one for the village as well. The difference, obviously, is between what the effect of the ordinance is. It may not affect anybody's rights when you're talking about somebody going to the post office. It definitely affects the plaintiff's First Amendment right to offer this kind of entertainment when you apply it to the business. Okay. If you want to save a minute for rebuttal. Yes, Your Honor. Thank you very much. Mr. Cox. And actually, if you wouldn't mind, Mr. Cox, I would love for you to start with the question that Judge Mannion was just asking, because as I read this ordinance, it would be perfectly fine for one of the women who works at Foxy Lady at 12 noon to go to the post office in Dick's wearing her G-string and pasties, because you have said that that's fine, and some people are free spirits, and maybe that's what they like to wear. So is that correct? I think that is correct. I think that this village made every attempt to comply with the cases that were there to regulate public nudity. But what I don't see in terms of the compliance, and this is what really worries me, and I'm focusing right now on Ordinance 05, the public nudity one, not the liquor ones. After Alameda Books, after our decisions in Annex Books and others, it seems to me that data has to lie behind these prohibitions on public nudity. The village, of course, has precluded the possibility that all sorts of theater could be presented there, live theater. You couldn't have a theater production of Schindler's List. You couldn't have a theater production of Hair. You couldn't do all sorts of things. The village of Dick's is not the city of Los Angeles, right? So the data that applies to the city of Los Angeles, it seems to me, is virtually useless in something the size of the village of Dick's. So I don't see how on the pleadings, consistently with what the Supreme Court and this Court has been doing, we can just assume that there are problems with nudity that can be regulated this way. Well, first let me address Alameda Books because that was the case mentioned by counsel. In that case, which was a 2002 case, there was a report and the police had a 1977 report which they relied upon. But there's an interesting part in the case where the court notes there was a dispute between the parties. The city said, we want to rely on this opinion over here, which was Hart Books Stores. And the opposing party said, no, you can't rely on that. The court said this, we do not need to resolve that dispute whether you can rely on the evidence, the foundation from other opinions. We don't have to resolve that dispute here because the city had a report. Now, what seems to me is a concurrence. You're talking about secondary effects? Yes, the evidence of secondary effects. Is this place continuing to operate? It is. Okay. Well, at this point, there may be secondary effects. That's what always worried me about having to have it before you open the business because how are you going to have secondary effects? How long has this place been open? At least a year. I think it opened in 2010. And at the time it opened, the public nudity, the previous nudity ordinance had been in effect for 70 years. In other words, they moved to a town that had already had in place a public nudity ordinance. But, of course, there's all sorts of law about that, not to mention that they're not next door to the church or something. They're over on the other side of the interstate highway, right? They are. They are on the other side of the interstate highway near a couple of farms and homes over there as well. It's a small community. There are other businesses in the community. They have a nice restaurant. They have a funeral home. They have a bank and so on. There are a number of businesses, and this would apply to all of them. There's a school there too. There is a school, Rome School. It's a very fine grade school there as well, nearby. But you were saying that, getting back to Alameda and so on, that there's a report. In Annex Books in New Albany, we held, in a somewhat different context, I admit, that a municipality has to provide proof of adverse secondary effects. We remanded that case for that kind of investigation. It doesn't seem, for some place the size of Dick's, it would be all that hard to collect the evidence. But the First Amendment is a very important part of the Constitution, right? And you can't just assume that there are adverse secondary effects if you don't know. As I said, Dick's is not Los Angeles. It's a very different sized place. It's in a different context. In fact, I think we could say that the effect would be greater in a town this size. How do you know? Wouldn't it depend on where it is and how far it is from the center of town and how many roads, whether there's an underpass. I assume there must be an underpass or an overpass to get past the highway. You know, you're just kind of going on hypothetical assumptions is not the way to handle the First Amendment. Well, the plaintiff has actually provided some evidence, and I think the court has noted some evidence in its complaint that there are secondary effects with the letter from the president of the village to them talking about the various effects which they've attached to the complaint itself. They're basically talking about sort of the harassment or something. I don't know how they label it. They don't describe why the police are there. They're just there. They characterize it that way. The only thing the letter says anyway, I mean, this is a whole different law. The village of Dick's and the common law of Illinois already prohibit maintaining a nuisance, and so to say, stop maintaining a nuisance, pick up your trash and debris, and stop making loud noises, that's one thing. It's the nudity that's the crux of all of this, and the Supreme Court has recognized that there is an expressive element there. And they can absolutely express themselves completely. This does not prohibit. No, they can't, not if the expression requires actual nudity and not pasties. Justice Rehnquist recognized that in the Barnes case, where he noted that, yes, there is some degree of expression once you drop the last stitch, and I think Justice O'Connor did the same thing in the city of Erie. He said, but there are limits, and that is the limit, and that's the limit here. I do want to say this. Well, we don't know. I mean, that's the question. What are the limits, and what justification does the village need to put forth to impose those limits? I think that's the legal issue. Well, I did want to address the court's question about the Annex Books case, because in that case, there were businesses being treated differently, adult businesses being treated differently from other businesses. Here, we don't have that. Well, don't we really? I mean, how many people, I mean, to be honest, hypotheticals to one side, want to go into the bank in the buff? I mean, has that ever happened? Well, I don't know. In Southern Illinois, anything can happen. I doubt it. Really, it's not part of what you expect to go on, even though there is a bank in Chicago that advertises Bank in the New because they were talking about doing it on the Internet, so supposedly you could do that. But in Annex Book, they did have a trial. They did present evidence. Judge Easterbrook said the evidence was not enough. And a remand from this court. And a remand to have more. But in the Alameda Books case, Judge Kennedy is still, and this court has still recognized the language in Wretten that says, you can rely on other cases and the evidence contained therein. Now, if Wretten's overruled. Isn't it confusing, though? The Supreme Court has not been giving either you or your opponent or this court as much guidance as we might prefer to have, right? So you wind up with these splintered courts and pluralities, and that's why I've been going all the way to Annex Books, because we're trying to make some sense of all of this. Right. What you've attempted to do, what your town has attempted to do, is to not target. You're trying to spread it all out. And, of course, that's the only one, as Wood points out, that I sort of joke about it, because technically the dress code applies throughout the town. And it has for 75 years. If you wear nothing more than this opaque stuff and pasties and whatever else you've got to do, that's all you need. And I know you can go to a beach and darn near find that, but I'm not sure how that would go over in the town of Dix. And you almost have to say that, which you did, and say this is exactly right. And, therefore, since it applies to everybody, we're not targeting this one business. We're talking about the First Amendment, strict scrutiny, whereas that liquor, I think, is more of a rational basis issue. That's at least my view. But they can't do without it, because people probably need a few hits before they are entertained. I don't understand all this, but that's, I guess, what happens. So it's a combination that they're looking at. But this is unusual, at least the way I see it, that you've tried to avoid what the others have required, where they do actually target specific restrictions and zoning and all that stuff. We had one not too long ago on the zoning issue. And that's where this, you're trying to separate yourself from that. Well, I mean, here's a business that came to a town that for 70 years had an ordinance against public decency. So when they say this was targeted at them, it was not. In fact, the new ordinance is less restrictive. But you're assuming Dix is the only place that's had such ordinances, and actually the litigation history would suggest that maybe Dix wasn't so unusual. They've been challenged when businesses want to open, but I'm not sure Dix is the only town in Illinois, south or north of I-80, that has such an ordinance. Oh, I would say it's not. I'd say it's a common ordinance. So it's not like the plaintiffs were trying to be difficult. They opened it because it's right off the interstate, probably. They were hoping for truck drivers to stop or something. I don't know. Well, I think what happened was, it's just what counsel said. I think they moved there thinking they weren't in the village, when they were in the village, and came to a village that had a long, long-standing public decency ordinance. And to their credit, let me defend my client a little bit to say that they did take that ordinance, they modified it, modernized it, looked at the court's opinions, and tried to decide, which includes Retton, that says you can look at other court opinions to determine that there are secondary effects, and not have to conduct a study. And they did all of that in an effort to write an ordinance that complied with the law. And I agree with the court that cases are sometimes difficult to read. Do you want to say a word before you sit down about the alcohol ordinances? Yes, sure. The alcohol is a separate issue, in our view. I think what the plaintiff is saying is that there is a provision that says you cannot tell people they cannot personally possess alcohol. And so what they do is they read that to say, if I go into Foxy Lady's building, which has no liquor license, the city has never issued a liquor license, ever. To anyone, right? At any time. So that's how we know it's dry? It's not that they passed an ordinance saying there never will be one. It's just that they never have done it? That's right. And I think when you look at the Davis case in the Fifth District, it explains that whole history of that. They just have never issued one, ever. And so I think what they're saying is to get around that. Well, the law says you can personally possess alcohol, so I will take it into there. And I guess if they came in with a bag of it and it was unopened, it would be fine. But that's not what they do. No, it wouldn't be fine under this ordinance, because it's a place that is, I don't think so, because when you look at it, it says a public place is a place that's open to or held out for use by the public or is otherwise available to the public. And this is a place that the public is invited into to public accommodation for 06. I think if you walk in with the seal still on and then you open it up, you are under these ordinances. It would be very important to me, actually, if you are or aren't. Well, I think, Your Honor, when you look at Ordinance 04, it says no person shall possess any open container of alcoholic liquor or consume alcoholic liquor. Right, but then it says a public property or public place, and then the final couple of sentences define the term public property or public place. Correct. And it goes all the way over to a place open to or held out for use by the public or otherwise available to the public. That's correct. So I would think your restaurant would be a public place. Yes. By that definition. And I would think Foxy Lady is a public place by that definition. It is. So, in other words, you can't just carry your liquor in and open it up once you're there. That's correct. It cannot be open. My point was that it can be seen. So if you want to just have it sit there in the chair next to you, I guess, to make you feel better, that's fine. But, you know, who wants to do that? Well, what it's saying is you cannot have it open or consume it in a public place, including any place in town. And, therefore, what the plaintiff is attempting to argue is, well, they're equating Foxy Lady's with a private home, which it is not. And they're also saying we are a public place, but that's the nature of the business and it's a way to kill the business if you don't let people drink. I think it's a practical matter. Well, there are places. Actually, there's a place in Springfield. I haven't been there, but I'm told there is a place that has nude dancing and does not serve alcohol by ordinance and is doing quite well. Okay. Don't ask me. Maybe on that note we will let you come to the end of your argument and I'll see if Mr. G.M. Pietro has anything further to say. Well, I just want to close by saying this. This village came to this village that had longstanding laws about public decency. It had longstanding laws about alcohol. They may have made a stake where they located, and it may be across the interstate, but it's a very small community, and it does have an effect. And the cases for a long time have told us that, and we should be able to rely on those. Thank you so much. Thank you. Anything further? I think you have a minute, Mr. G.M. Pietro. All of the things we've been talking about shows why we need a hearing and why we need to get evidence on the record to find out what's really going on. And that's what we're saying we're entitled to have at this stage of the proceedings. In the meantime, the business is open. It's operating under the restrictions. It's still operating, yes. And it doesn't serve, they're not using booze. Does not serve food. Not serving. No, I mean they're not. Well, it might. There are places that used to do that.  I remember in Texas. No, I don't think it does serve food. A lot of places that were so-called dry, but you could bring your own in there. Right. Well, that's what they're doing now, is people are bringing. But they're not supposed to, based on this ordinance. Well, based on this ordinance, which is obviously why we're here. Yeah, right. You can't do one without the other. Fair enough. They're sort of saying, like your company did, if you move in next to the pig farm, you can't complain about the smell. And they're saying, well, you moved in on that turf where you have all these strict rules. You should check your zoning. This is more like the pigs complaining about the new neighbors, though, Judge. That's one way of putting it, I guess. All right. Well, thank you very much. The court will take the case under advisement, and we will have a brief recess before we continue with this morning's cases.